UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMES R. PUTMAN, JR, <br> *Plaintiff*, <br> v. <br> SAVAGE ARMS, INC, <br> *Defendant*. | **SECOND AMENDED COMPLAINT** <br> *Case No.* 7:17-CV-00168-GEC |

Plaintiff James R. Putman, Jr. ("Putman"), by counsel, and with the defendant's consent, sets forth this Second Amended Complaint:

1. Putman is a resident of Kernersville, North Carolina and at the time of the subject incident was a full-time firefighter and owner of a small concrete business.

2. Defendant gun manufacturer Savage Arms, Inc. ("Savage") is, and was at all relevant times, a Delaware corporation with its headquarters and principal place of business in Westfield, Massachusetts.

3. The Court has personal jurisdiction over Savage pursuant to Virginia's long-arm statute, *viz.*, Va. Code § 8.01-328.1(4)-(5), based on Savage's substantial business activity, the reasonably expected use of its products, and the tortious activity causing Putman's injury all occurring in or sufficiently relating to the Commonwealth of Virginia.

4. There is complete diversity of citizenship among the parties.

5. On November 11, 2016, Putman was hunting in George Washington National Forest in or near Alleghany County, Virginia.

6. Putman was using a Savage 10ML-II muzzleloader, bearing serial number M008570, that was designed, manufactured, and sold by Savage, and was purchased new by Putman in or around 2008 in North Carolina.

7. The Savage 10ML-II is, according Savage, safe to fire with modern smokeless gun powder, and it was specifically designed, marketed, and advertised as fit for that purpose.

8. Putman loaded the muzzleloader in a foreseeable manner, using ammunition recommended by Savage, and fired it in the left-handed standing position. The gun's barrel exploded. The metal barrel burst apart, severing Putman's right thumb from its socket and leaving it dangling from his hand.

9. In shock and grasping his wrist to stop blood-loss, Putman rode his mule out of the woods and was air-lifted to Roanoke Memorial Hospital. The amputation of Putman's thumb and other substantial injuries to his right hand required multiple surgeries and considerable follow-up therapy.

10. The explosion of the Savage 10ML-II muzzleloader resulted in permanently disabling injuries to Putman, ultimately forcing Putman to retire from his firefighting career.

11. These serious injuries and other damages were all caused by Savage's defective design, manufacture, distribution, and sale of the Savage 10ML-II muzzleloader, which was unreasonably dangerous for use when it was sold by Savage.

12. These injuries were also caused by Savage's willful and wanton failure to warn its customers and the general public about the dangerously defective 10ML-II muzzleloader, even though Savage knew about the danger of its intended use, knew that users of the muzzleloader would not recognize that danger, and knew that the rifle had caused and would likely continue to cause injuries, including loss of limb or even life.

13.     Rather than recall the 10ML-II muzzleloader, or warn its customers and the general public about the known danger posed by its defective rifles, Savage continued to sell and advertise the 10ML-II.

14.     As a direct and proximate result of Savage's willful and wanton conduct, negligence, and breach of its legal duties, Putman was seriously and permanently injured; lost his ability and his capacity for competitive employment; endured and will continue to endure physical pain, emotional suffering, mental anguish, inconvenience, and loss of enjoyment of life.

15.     As a direct and proximate result of Savage's willful and wanton conduct, negligence, and breach of its legal duties, Putman has incurred extensive medical and related expenses associated with his medical treatment, lost income, and lost capacity to earn income.

## COUNT I:  NEGLIGENCE DESIGN

16.     Plaintiff incorporates by reference all preceding paragraphs as though fully restated and set forth here.

17.     At all relevant times, Savage owed a duty to Putman and to the general public to exercise reasonable care by properly designing its firearms and related parts to be fit for ordinary purposes for which they are to be used and to properly inform users of how to use its firearms, to include both foreseeable uses and foreseeable misuses.

18.     The ordinary purposes for which the Savage 10ML-II was designed included the user personally loading and operating the Savage 10ML-II using modern smokeless gun powder.

19.     The Savage 10ML-II was unreasonably dangerous in design in that foreseeable uses could and did result in catastrophic barrel failure of the Savage 10ML-II.

20.     Savage was aware of the unreasonably dangerous design.

3

21. The danger of such foreseeable uses and misuses of the Savage 10ML-II existed when the product left Savage's control.

22. Savage breached its duty by designing the Savage 10ML-II that would and did experience catastrophic failure when used in a foreseeable manner.

23. As a direct and proximate result of Savage's negligent breach of its duty to design the Savage 10ML-II in a manner fit for the ordinary purposes for which it is used, Putman suffered the previously described injuries and damages.

COUNT II: NEGLIGENT MANUFACTURING

24. Plaintiff incorporates by reference all preceding paragraphs as though fully restated and set forth here.

25. At all relevant times, Savage owed a duty to Putman and to the general public to exercise reasonable care by properly manufacturing its firearms and related parts according to Savage's own specifications, and in accordance with general industry standards and safe practices.

26. It was known or foreseeable to Savage that if it manufactured and sold firearms with defective barrels that were not fit for the 10ML-II's intended and foreseeable uses and misuses, shooters and bystanders would be subject to significant risk of severe injury or death.

27. Savage ultimately manufactured 10ML-II muzzleloaders that are likely to be dangerous for their intended and foreseeable use.

28. Among other things, Savages breached its duties when it failed to ensure that the 10ML-II's barrels and related parts:

    a. underwent a reasonably appropriate manufacturing process with adequate quality assessment and control measures in place;

    b. consisted of steel and alloy materials reasonably fit for a muzzleloader under conditions of its foreseeable use;

    c. consisted of sulfur and other additives in a quantity and manner reasonably fit for a muzzleloader under conditions of its foreseeable use;

    d. were connected to the surrounding parts of the firearm in a reasonably fit manner in order to maintain overall integrity of the firearm; and

    e. were otherwise safe for foreseeable use, including for use with modern smokeless gun powder.

29. These failures, individually or in concert, resulted in a defective and unreasonably dangerous Savage 10ML-II muzzleloader.

30. Savage did not have any reason to believe that users of 10ML-II muzzleloader would recognize that it was dangerous for its intended and foreseeable uses.

31. As a direct and proximate result of Savage's breach of its duty to manufacture the Savage 10ML-II in a manner fit for the ordinary purposes for which it is used, Putman suffered the previously described injuries and damages.

### COUNT III: WILLFUL AND WANTON FAILURE TO WARN

32. Plaintiff incorporates by reference all preceding paragraphs as though fully restated and set forth here.

33. At all relevant times, Savage had a duty to warn Putman and the general public of the unreasonable dangers and defects that it knew or should have known existed.

34. Savage breached the duty of care it owed to its customers and the general public, and was thereby negligent and reckless, when it knowingly, intentionally, willfully and wantonly failed to warn its customers and the general public of the Savage 10ML-II muzzleloader's

defective and unreasonably dangerous condition when Savage knew that its 10ML-II muzzleloaders were unreasonably dangerous, that they were causing severe injuries, and that the muzzleloaders would likely continue to cause more injuries and potentially death.

35. Instead of properly warning its customers and the general public of these dangers or recalling the rifles, Savage continued to advertise that the Savage 10ML-II muzzleloader was safe for use, and continued to sell the 10ML-II.

36. As a direct result of these reckless acts and omissions, Putman suffered the previously described injuries and damages.

37. Because of Savage's willful and wanton failure to warn, and its conscious disregard of others' rights with knowledge that injury would likely occur, Putman is entitled to punitive damages.

COUNT IV: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

38. Plaintiff incorporates by reference all preceding paragraphs as though fully stated and set forth here.

39. At all times relevant to this action, Savage was a merchant with respect to the subject firearm and Putman was a foreseeable user of the subject firearm.

40. Savage impliedly warranted that the Savage 10ML-II it designed, manufactured, distributed and sold was merchantable under applicable law.

41. Savage breached this implied warranty of merchantability because the subject firearm was defective, unreasonably dangerous, was not fit for the ordinary purpose for which it was intended, and could not pass without objection in the industry in which it was sold.

42. As a direct and proximate result of Savage's breach of the implied warranty of merchantability, Putman suffered the previously described damages.

WHEREFORE, the plaintiff asks for judgment against Savage in an amount in excess of $75,000.00 for compensatory damages, punitive damages up to the maximum allowable amount, pre- and post-judgment interest, and the costs of this action.

**The plaintiff demands a trial by jury.**

Respectfully submitted,

JAMES R. PUTMAN, JR.

By /s/Kenneth J. Ries
    Of Counsel

Kenneth J. Ries, Esq. (VSB No. 29909)
Joshua D. Goad, Esq. (VSB No. 74915)
Jason R. Whiting, Esq. (VSB No. 88093)
Joseph A. Piasta, Esq. (VSB No. 80801)
JOHNSON, AYERS & MATTHEWS, PLC
P.O. Box 2200
Roanoke, VA 24009
Ph: (540) 767-2000
Fx: (540) 982-1552
kries@jamlaw.net
jgoad@jamlaw.net
jwhiting@jamlaw.net
    *Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing Second Amended Complaint was electronically filed on April 30, 2018 with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

                                                                                     /s/ Kenneth J. Ries