UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMES R. PUTMAN, JR.,<br><br>    *Plaintiff*,<br><br>v.<br><br>SAVAGE ARMS, INC.,<br><br>    *Defendant*. | **BRIEF IN SUPPORT OF PUTMAN'S MOTION**<br>*IN LIMINE*<br><br>*Case No*. 7:17-CV-00168 |

Putman lost his right thumb on November 11, 2016 when the barrel of his muzzleloading rifle exploded. Putman was using a Savage Arms, Inc. ("Savage") 10ML-II muzzleloader, the only mass-produced muzzleloader recommended by the manufacturer for use with modern smokeless gunpowder as a propellant. The rifle exploded because the proprietary 416R stainless steel that Savage used for the barrel of Putman's gun was not suitable to use for a smokeless powder muzzleloader barrel and because Savage's instructions and warnings were defectively vague and inadequate.

Savage wants to introduce evidence that it believes shows that Putman is responsible for his own injuries, even though he used his 10ML-II in a way that Savage expected. However, some of Savage's evidence is inadmissible. For the reasons that follow, and pursuant to the Federal Rules of Evidence, this Court should exclude from trial the following:

(1) Evidence or comment from counsel for Savage that Putman to failed to properly clean his rifle;

(2) Evidence or comment from counsel for Savage that Putman misused his rifle by using a "jag" or aftermarket tip on his ramrod;
(3) Evidence or comment from counsel for Savage that Putman did not have blaze orange clothing with him at the time of his injury;
(4) Evidence or comment from counsel for Savage that Putman did not use protective eyewear or hearing protection at the time of his injury;
(5) Evidence or comment from counsel for Savage that Putman told Conservation Police Officer Michael Entsminger that he may have "accidentally loaded the gun after it was already loaded" at the time of his injury;
(6) Opinions of Michael Entsminger regarding the cause of Putman's injury;
(7) Department of Game and Inland Fisheries Incident Report;
(8) Virginia Hunting Incident Supplement;
(9) Evidence or comment from counsel for Savage that Putman misused his rifle by loading it with more smokeless powder than recommended in the manual;
(10) Evidence or comment from counsel for Savage that Putman misused his rifle by loading it with a PowerBelt bullet; and
(11) Evidence or comment from counsel for Savage that 416R stainless steel is used in guns other than Savage's 10ML and 10ML-II muzzleloaders.

**1. Cleaning of Rifle**

Savage has designated Dr. Sam Fadala who has written a report in which he opines that Putman failed to regularly clean his 10ML-II rifle. (*See* Fadala Report at 4, attached as **Exhibit 1**.) Even if true, Savage has not proffered any evidence or opinion that Putman's alleged failure to regularly clean his rifle was a proximate cause of the rifle explosion or his injuries.

In *Garrett v. Desa Industries, Inc.*, 705 F.2d 721 (4th Cir. 1983), the Fourth Circuit held that the plaintiff's nonuse of safety glasses should not have been considered by the jury, even though the plaintiff's eye was injured when his stud driver exploded and safety glasses were provided by the manufacturer of the product. "The stud driver would have exploded whether or not [the plaintiff] was wearing safety goggles. His nonuse of the

2

goggles was not a proximate cause of that explosion. Thus…[the manufacturer] may not introduce evidence of the nonuse unless and until it demonstrates the extent to which [the plaintiff's] injuries could have been avoided by wearing the safety goggles." *Id.* at 726.

Similarly, because there is no evidence that a failure to clean the rifle caused Putman's rifle to explode or that Putman's injury would have been less severe had he regularly cleaned his rifle, Savage should not be permitted to introduce evidence that Putman did not clean his rifle. The evidence or opinion that he did not regularly clean his rifle is not useful, relevant, or probative and should be excluded pursuant to F.R.E. 403.

**2. Use of a "Jag" on the Ramrod**

Dr. Fadala has also been proffered to opine that Putman's use of a "jag [aftermarket ramrod attachment] down upon the bore" was "not proper procedure." (*See* Ex. 1 at 4.) Even if true, Savage has not proffered any evidence that Putman's alleged use of a "jag" was a proximate cause of the rifle explosion or his injuries.

For the reasons stated in Section 1 of this brief, without evidence that Putman's use of jag caused his rifle to explode or made his injury more severe, such evidence is inadmissible. *Garrett v. Desa Industries, Inc.* at 726. Savage should not be permitted to introduce evidence or opinion that Putman's use of a "jag" was improper or was a misuse of the rifle. Such evidence is not useful, relevant, or probative and should be excluded pursuant to F.R.E. 403.

**3. Nonuse of Blaze Orange Clothing**

Savage is expected to seek to introduce evidence that Putman did not wear or have with him any blaze orange clothing at the time of his injury, which is purported to be a violation of hunting regulations. Even if true, Savage has not proffered any evidence that

Putman's alleged nonuse of blaze orange clothing was a proximate cause of the rifle explosion or his injuries.

For the reasons stated in Section 1 of this brief, without evidence that Putman's nonuse of blaze orange clothing caused his rifle to explode or made his injury more severe, such evidence is inadmissible. *Garrett v. Desa Industries, Inc.* at 726. Evidence or opinion regarding Putman's nonuse of blaze orange clothing is not useful, relevant, or probative and should be excluded pursuant to F.R.E. 403.

4. **Nonuse of Protective Eyewear or Hearing Protection**

Savage is expected to seek to introduce evidence that Putman did not wear protective eyewear or hearing protection at the time of his injury. Savage has not proffered any evidence that Putman's alleged nonuse of protective eyewear or earwear was a proximate cause of the rifle explosion or his injuries.

For the reasons stated in Section 1 of this brief, without evidence that Putman's nonuse of protective eyewear or hearing protection caused his rifle to explode or made his injury more severe, such evidence is inadmissible. *Garrett v. Desa Industries, Inc.* at 726. Evidence or opinion regarding Putman's nonuse of protective eyewear or hearing protection is not useful, relevant, or probative and should be excluded pursuant to F.R.E. 403.

5. **Statement to Michael Entsminger Regarding Double-Loading**

Savage is expected to seek to introduce evidence that Putman speculated to Conservation Police Officer Michael Entsminger that he "must have…accidentally loaded the gun after it was already loaded." (Entsminger dep. at 53:7-13, attached as **Exhibit 2**.) Even if true, Savage has not proffered any other evidence that Putman's rifle was "loaded

4

after it was already loaded," nor has it proffered any evidence or opinion from an expert that such behavior was a proximate cause of the rifle explosion or his injuries.

For the reasons stated in Section 1 of this brief, without evidence that Putman's rifle exploded or his injuries were made more severe because the rifle was "loaded after it was already loaded," such evidence is inadmissible. *Garrett v. Desa Industries, Inc.* at 726. Savage should not be permitted to introduce evidence or opinion that Putman double loaded or loaded his rifle after it was already loaded. Such evidence is not useful, relevant, or probative and should be excluded pursuant to F.R.E. 403.

### 6. Causation Opinions of Michael Entsminger

Conservation Police Officer Michael Entsminger has not been designated by any party as an expert witness. Nevertheless, Savage is expected to seek to introduce evidence that Officer Entsminger concluded that Putman was injured because "he had double-loaded the muzzleloader." (Entsminger dep., Ex. 2 at 54:5-6.)

Under F.R.E. 701, a non-expert witness may give an opinion only if it is (a) based on his perception; (b) helpful to clearly understand his testimony or determine a fact in issue; and (c) not based on scientific, technical, or specialized knowledge. Officer Entsminger's opinion fails on all three elements.

First, Officer Entsminger's opinion is primarily based on statements made by Putman while Putman was receiving treatment for his injuries in the hospital. (*See* Ex. 2 at 48:17-54:1.) Thus, the opinion is not based on his perception.

Second, Officer Entsminger's testimony involving his observations and investigation does not require his conclusion in order to be understood. Indeed, the incident report he prepared regarding Putman's injury does not contain his opinion and he testified that there

5

was not "anything else that [he] can think of related to [his] investigation that [he] failed to include in [his] report." (Ex. 2 at 54:7-14; s*ee* Department of Game and Inland Fisheries Incident Report, attached as **Exhibit 3**.) Thus, even Officer Entsminger does not believe that his opinion is helpful to clearly understand his testimony or determine a fact in issue.

Third, Officer Entsminger's opinion on what caused Putman's 10ML-II rifle to explode is an opinion that requires knowledge within the scope of F.R.E. 702. In seeking to exclude Putman's causation expert, Savage argued that rendering a causation opinion in this case requires highly specialized knowledge, including particular metallurgical and gun industry backgrounds. (*See* ECF No. 65 and 83.) While Putman disagrees with a majority of Savage's arguments on those issues, Putman agrees that it requires specialized knowledge that Officer Entsminger does not have or purport to have. (*See* Ex. 2 at 51:4 ("I'm not familiar with smokeless powder.")) Accordingly, the opinion requires, but is not supported by, a foundation of scientific, technical, or specialized knowledge within the scope of Rule 702.

Since Officer Entsminger's causation opinion does not satisfy the requirements of Rule 701, it should be excluded.

**7. Department of Game and Inland Fisheries Incident Report**

Savage is expected to seek to introduce into evidence a Department of Game and Inland Fisheries Incident Report (the "Report") prepared by Officer Entsminger. (Attached as **Exhibit 3**.) Aside from the inadmissibility of his causation opinions, portions of Officer Entsminger's report are inadmissible because the source of the information and other circumstances indicate a lack of trustworthiness.

6

Generally, a record containing factual findings from a legally authorized investigation is admissible under F.R.E. 803(8). However, such records are inadmissible if the opponent of the evidence (here, Putman), shows that the source of information or other circumstances indicate a lack of trustworthiness. "[A] trial judge has the discretion, and indeed the obligation, to exclude an entire report or portions thereof…that she determines to be untrustworthy." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 (1988). Putman can make such a showing.

The Report contains a description of a purported telephone conversation between Officer Entsminger and Putman on November 13, 2016. (Ex. 2 at 52.) The description appears on pages 5 and 6 of the Report, beginning with, "ACCORDING TO THE VICTIM…" and continuing to the end of the Report narrative. The Report's description of the conversation includes numerous factual statements that are indisputably false and purported speculation by Putman that could not have been based on any reliable information because of the circumstances of the purported conversation with Putman.

On November 13, 2016, Putman was in the hospital in Roanoke, Virginia, having undergone surgeries to amputate his thumb and repair some of the damage to the fingers on his right hand. Thus, Putman was medicated and does not recall the purported telephone conversation with Officer Entsminger. (Putman dep. at 91:15-23; 117:1-11; 120:2-5, attached as **Exhibit 4**.) In addition to having no recall of the conversation, Putman can identify many purported statements that are not true or that he could not have made as reported.

The Report says that Putman had owned the gun between fifteen and twenty years. (Ex. 3 at 5.) However, Putman's gun was not manufactured until 15 years and one month

7

before the date of the conversation and he had not purchased it until approximately 2008. (ECF No. 62 at 6; Ex. 4 at 118:5-9.) Next, the Report incorrectly identifies Putman's powder as 45-68 when he was instead using IMR SR4759 and inaccurately identifies the "Lee dipper" size that Putman used to measure the propellant. (Ex. 4 at 118:11-23.) The Report also records that Putman had loaned the subject 10ML-II rifle to another person before this incident, which was not correct. (Ex. 4 at 119:6-9.) Finally, the Report records that Putman told Officer Entsminger that "he must have left an air gap or accidently loaded the gun after it was already loaded." (Ex. 3 at 6.) Putman testified that he did not know what an "air gap" was or that "load[ing] the gun after it was already loaded" could cause an explosion until researching similar accidents after his injuries. (Putman dep., Ex. 4 at 121:4-122:18.) Thus, the information on which Officer Entsminger based this portion of his Report is, in large part, incorrect and untrustworthy.

Since a public record is inadmissible if the opponent of the evidence has shown it is based on untrustworthy information, the portion of the Report narrative beginning with "ACCORDING TO THE VICTIM…" should be excluded pursuant to F.R.E. 803(8)(B) and 403.

### 8. Virginia Hunting Incident Supplement

Savage is expected to seek to introduce into evidence a Virginia Hunting Incident Supplement (the "Supplement") based on information provided by Conservation Police Officer Michael Entsminger. (Attached as **Exhibit 5**.) However, portions of the Supplement contain Officer Entsminger's speculative conclusions and are inadmissible for the reasons stated in Section 6. Additionally, because the source of the information and Officer

Entsminger's lack of skill or experience with smokeless powder all indicate a lack of trustworthiness.

As discussed in Section 7 above, public records are inadmissible if the opponent of the evidence shows that the source of information or other circumstances indicate a lack of trustworthiness. Also as discussed above, much of the information upon which Officer Entsminger based his conclusions about the cause of Putman's injuries was untrustworthy and the opinions are not based on his own perception. (*See also* Entsminger dep., Ex.2 at 59:17-60:9.) However, because the Supplement contains Officer Entsminger's speculative opinions about the accident's cause, they have additional layers of untrustworthiness.

First, the conclusions on page 6 of the Supplement are speculative on their face. The "Primary Cause" listed is "*Possibly* double loaded muzzleloader" and the "Secondary Cause" is listed as "*Possibly* too much powder" (emphasis added). Under Virginia law, an expert opinion based on a possibility is irrelevant because it is speculative. *Hubbard v. Commonwealth*, 243 Va. 1, 13, 413 S.E.2d 875, 881 (1992). This is also true for a lay witness's opinion like Officer Entsminger's guess about what caused Putman's injury.

Second, for the reasons stated above, Officer Entsminger's opinions about the causes of Putman's injuries require scientific, technical, or other specialized knowledge within the scope of F.R.E. 702 and are not rationally based on Officer Entsminger's perception. Officer Entsminger's causation opinions in the Supplement are inadmissible because they lack the trustworthiness of lay witness's opinions based on the witness's perception that do not require specialized knowledge.

Third, one of the factors that the Federal Rules of Evidence Advisory Committee proposed to determine whether a public record was based on trustworthy sources, is the

9

investigator's skill or expertise. Advisory Committee's Notes on F.R.E. 803(8), 28 U.S.C.App., p. 725. Here, Officer Entsminger admitted, "I'm not familiar with smokeless powder." (Ex. 2 at 51:4.).

Putman's injury occurred while using recommended smokeless powder with his 10ML-II rifle. Savage admits that black powder knowledge is not transferrable to smokeless powder muzzleloading. Savage's "Quick Tips" that it sends with each 10ML-II it sells reads, "The Savage Model 10MLII [sic] Muzzleloader requires unique knowledge and techniques uncommon to traditional 'black powder' muzzle loader [sic]." (ECF No. 67-4.) Thus, both the information on which Officer Entsminger based his opinions in the Supplement and Officer Entsminger's lack of skill and expertise with smokeless powder make the conclusions untrustworthy.

Since public records are inadmissible if the opponent of the evidence has shown are based on untrustworthy information, the opinions regarding the cause of Putman's injuries in the Supplement should be excluded pursuant to F.R.E. 803(8)(B) and 403.

**9. Misuse By Loading With 46.3 Grains of Smokeless Powder**

Savage is expected to introduce opinion evidence through Steven Rodgers that Putman used 46.3 grains[1] of smokeless gunpowder, as opposed to the 45 grains that Rodgers believes is the "maximum load threshold." (Rodgers Report at 3, attached as **Exhibit 6**.) However, in his deposition, Rodgers admitted that "[w]e don't know" how much powder Putman used when he was injured. (ECF No. 68-1 at 159.) Furthermore, even if we did know how much powder Putman had in his gun, Rodgers agreed that "a 10ML-II stainless steel barrel should not come apart just because somebody uses 46.3 grains of IMR

---

[1] A grain is a standardized unit of measure for mass.

10

4759 versus 45 grains." (ECF No. 68-1 at 160, *see also id.* at 107.) Since Rodgers admits that he does not know how much gunpowder was in Putman's gun, his opinion about the amount of powder used is pure speculation.

Additionally, Rodgers acknowledged in his deposition that even measuring powder in the recommended way would be expected to result in the small variation in amount that Rodgers says contributed to Putman's injury. (*Id.* at 110.) Therefore, permitting Savage to introduce evidence or provide comment from counsel that the use of 46.3 grains of smokeless powder was an unexpected misuse of the gun would unfairly prejudice Putman since using 46.3 grains of gunpowder was an expected variation of a recommended loading procedure.

Since foreseeable use or misuse of a defective product will not defeat a product liability claim (*Jeld-Wen, Inc. v. Gamble by Gamble*, 256 Va. 144, 501 S.E.2d 393 (1998)), it is irrelevant whether loading the gun with 46.3 grains of smokeless powder was a misuse of the Savage 10ML-II muzzleloader. Irrelevant and unfairly prejudicial evidence is inadmissible under F.R.E. 402 and 403; accordingly, Savage should not be permitted to produce evidence or argue that Putman misused his rifle by loading it with 46.3 grains of smokeless powder.

**10. Misuse By Loading With PowerBelt bullet**

For the reasons stated and argued in Putman's briefs in support of his motion for partial summary judgment (ECF Nos. 69 and 87, incorporated herein), Putman's use of a PowerBelt bullet was foreseeable as a matter of law. Since foreseeable use or misuse of a defective product will not defeat a product liability claim (*Jeld-Wen, Inc. v. Gamble by Gamble*, 256 Va. 144, 501 S.E.2d 393 (1998)), it is irrelevant whether use of a PowerBelt bullet

11

was a misuse of the Savage 10ML-II muzzleloader. Irrelevant and unfairly prejudicial evidence is inadmissible under F.R.E. 402 and 403; accordingly, Savage should not be permitted to produce evidence or argue that Putman's use of a PowerBelt bullet was a misuse of the Savage 10ML-II rifle.

### 11. Use of 416R Stainless Steel in Other Firearms

Savage is expected to attempt to introduce evidence that the proprietary 416R stainless steel it used to construct barrels for its 10ML and 10ML-II rifles is also used in other guns. This evidence, Savage believes, will tend to show that 416R was an appropriate choice of barrel material in its smokeless powder muzzleloaders.

Testimony about the absence of accidents is admissible if a witness has sufficient basis to testify that "(a) a significant number of substantially *identical* products have been used in similar circumstances over a period of time; (b) [he] would likely be aware of prior accidents involving these products; and (c) to [his] knowledge, no such prior accidents have occurred." *Coker v. Louisville Ladder Inc.*, No. 4:08CV113, 2009 WL 10689514, at *2 (E.D. Va. June 4, 2009)(emphasis added)(citing *Forrest v. Beloit Corp.*, 424 F.3d 344, 355–56 (3d Cir. 2005) (collecting and discussing cases from several circuits); *See also Harold v. Black & Decker U.S., Inc.*, 295 F. App'x 530, 531 (3d Cir. 2008). The cases where such evidence of the absence of accidents was admitted all feature testimony regarding the same or similar products made by the same manufacturer. Savage has proffered no such evidence.

Savage's 10ML and 10ML-II rifles were utterly unique among mass-produced rifles. They were muzzleloaders for which modern smokeless powder was a recommended propellant. (*See* Putman's Brief in Reply to Opposition to Motion for Partial Summary Judgment, ECF No. 87 at 2.) Any use of 416R stainless steel as a barrel material in another

12

gun would be for either a cartridge gun where the user does not load separate powder and projectile, or a black powder muzzleloader where the propellant is much less powerful than the smokeless powder recommended for Savage's 10ML and 10ML-II rifles. Accordingly, no other firearm or muzzleloader using 416R stainless steel is a substantially identical product and the evidence will not be probative on the issue of whether 416R was an appropriate choice for a smokeless powder muzzleloader like the one that blew up and injured Putman.

Savage has not identified any witness who purports to have information regarding the lack of 416R gun barrel failures for other manufacturers. When Putman requested information about barrel failures in Savage-manufactured guns other than its 10ML and 10ML-II, Savage objected, stating that the evidence was irrelevant because the 10ML-II rifle is unlike other guns produced by Savage. (Savage's Answers and Objections to Plaintiff's Second Discovery Requests at ¶ 1, attached as **Exhibit 7**.) That is, Savage admitted that the gun at issue is not substantially similar to any other guns, even those using 416R stainless steel. Thus, evidence that 416R stainless steel has been used in other guns is inadmissible because its relevance cannot be demonstrated.

## CONCLUSION

For the reasons stated above, Putman requests that this Court enter an order excluding from trial (1) evidence or comment from counsel for Savage that Putman to failed to properly clean his rifle; (2) evidence or comment from counsel for Savage that Putman misused his rifle by using a "jag" or aftermarket tip on his ramrod; (3) evidence or comment from counsel for Savage that Putman did not have blaze orange clothing with him at the time of his injury; (4) evidence or comment from counsel for Savage that Putman did not

use protective eyewear or hearing protection at the time of his injury; (5) evidence or comment from counsel for Savage that Putman told Michael Entsminger that he may have "accidentally loaded the gun after it was already loaded" at the time of his injury; (6) opinions of Michael Entsminger regarding the cause of Putman's injury; (7) Department of Game and Inland Fisheries Incident Report; (8) Virginia Hunting Incident Supplement; (9) evidence or comment from counsel for Savage that Putman misused his rifle by loading it with more smokeless powder than recommended in the manual; (10) evidence or comment from counsel for Savage that Putman misused his rifle by loading it with a PowerBelt bullet; and (11) evidence or comment from counsel for Savage that 416R stainless steel is used in guns other than Savage's 10ML and 10ML-II muzzleloaders.

          Respectfully submitted,

          JAMES R. PUTMAN, JR.

          By    /s/
                   Of Counsel

Kenneth J. Ries (VSB No. 29909)
Joshua D. Goad (VSB No. 74915)
Jason R. Whiting (VSB No. 88093)
Joseph A. Piasta (VSB No. 80801)
JOHNSON, AYERS & MATTHEWS, PLC
P.O. Box 2200
Roanoke, VA 24009
Ph: (540) 767-2000
Fx: (540) 982-1552
kries@jamlaw.net
jgoad@jamlaw.net
jwhiting@jamlaw.net
jpiasta@jamlaw.net
Steven J. Crowley
CROWLEY & PRILL

3012 Division St.
Burlington, IA 52601
Ph: (319) 753-1330
Fx: (319) 752-3934
scrowley@cbp-lawyers.com
    *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing pleading was electronically filed on February 8, 2019 with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

                                                  /s/