IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMES R. PUTMAN, JR., | ) |
| | ) Case No. 7:17-cv-168 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SAVAGE ARMS, INC., | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter comes before the court on Plaintiff James R. Putman, Jr.'s ("Putman's") Motion to Exclude Opinion Testimony of Steven Rodgers, filed on January 8, 2019. ECF No. 57. Defendant Savage Arms, Inc. ("Savage") responded on January 21. ECF No. 72. Putman replied on January 29. ECF No. 86. The court heard argument on February 1. ECF No. 89. For the reasons stated below, the court **DENIES** Putman's motion.

I.

Federal Rule of Evidence 703 permits expert witnesses to base opinions on facts or data "that the expert has been made aware of or personally observed," as well as facts an expert "in the particular field would reasonably rely on." The trial judge serves as the "gatekeeper" of expert evidence by determining its admissibility and assessing the qualifications of the expert purporting to offer it. Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142 (1997). To establish "a standard of evidentiary reliability," an expert must testify about scientific knowledge. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589–90 (1993). To ensure relevancy, the expert's evidence or testimony must "'assist the trier of fact to

understand the evidence or to determine a fact in issue.'" Id. at 591 (quoting Fed. R. Evid. 702). When faced with potential expert testimony, the trial judge must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592–93. In particular, the Fourth Circuit Court of Appeals has "admonished that 'a plaintiff may not prevail in a products liability case by relying on the opinion of an expert unsupported by any evidence such as test data or relevant literature in the field.'" Oglesby v. Gen. Motors Corp., 190 F.3d 244, 249 (4th Cir. 1999) (quoting Alevromagiros v. Hechinger Co., 993 F.2d 417, 422 (4th Cir. 1993)).

## II.

Savage offers Rodgers as an expert to opine on Putman's alleged misuse of the Savage 10ML-II muzzleloader. Rodgers serves as the Product Safety Manager for the parent company of defendant Savage Arms.

Putman argues Rodgers's conclusions are either unhelpful to the jury or based on assumptions that have been disproven by evidence. For instance, Rodgers states Putman's choice of bullet may have caused the incident. ECF No. 68-3, at 6. Putman asserts that whether Putman used the type of bullet recommended by Savage is within the jurors' understanding. Additionally, Rodgers characterizes the PowerBelt bullet as an "integrated sub-based design bullet," id. at 3; this is the first time anyone has ever identified the PowerBelt bullet this way. Putman argues Rodgers does so to more closely align his description with language used in the 10ML-II instruction manual in "a transparent attempt to transform the facts to match his theory." ECF No. 68, at 9.

Putman points to several other assumptions in Rodgers's report that he claims are not properly formed or supported. For example, Rodgers opines that the amount of gunpowder Putman used caused his injury but does not know how much gunpowder was used and admits that overloading by this quantity of gunpowder is expected, even when powder is properly measured. Rodgers opines that Putman's injury was caused by an improperly "seated" bullet, but Putman asserts that this has been disproven by both Savage's and Rodgers's own testing. See ECF No. 68-5 (the results of Rodgers's "gun drop test" showing no midway migration of the bullet); ECF No. 68-6 (the results of Savage's testing of unseated bullet). Rodgers does not know how much force it would take to separate a PowerBelt bullet, ECF No. 68-1, at 83–84, has never seen a bullet become stuck after separating, id. at 135–37, and is unaware of any reports from the field where a secondary propellant bed formed in a muzzleloader. Id. at 138–39. Finally, Putman argues that Rodgers is unqualified to critique Dr. Druschitz's conclusions because he has no specialized scientific education and his recoil force opinion is based on speculation and incorrect facts. Rodgers holds a business degree and has no science background except for one semester each of chemistry and physics. See ECF No. 68-3, at 12. He admits he does not know how a rupture of the barrel would affect the recoil and does not know how much pressure it takes to fracture a 10ML-II barrel or if a high-pressure event is required to fracture one. ECF No. 68-1, at 146.

Savage claims that Putman misreads Rodgers's opinion. Rodgers never stated that the PowerBelt bullet alone caused the accident but concludes a combination of events led to it, including the type of bullet used and the overloading of the powder. See ECF No. 68-3, at 6.

3

Savage also argues that, while a juror can read an instruction manual, understanding the consequences of Putman's misuses is beyond the purview of a lay juror. Neither would a juror understand why Savage instructs shooters to use a .45 caliber bullet with a sabot while using smokeless powder. Rodgers's testimony will help the jury understand these issues.

Savage expresses confusion as to the objection to the term "integrated sub-based design bullet" and contends that Rodgers's terminology has no impact on the validity of his opinion. Savage asserts that Rodgers's opinion on the movement of the bullet within the barrel is reliable and that the tests Putman claims disprove Rodgers's theories bear no relation to the facts of this case. Finally, Savage argues Rodgers is qualified to criticize Putman's expert—not being a metallurgist does not render Rodgers unqualified, particularly since his criticisms of Dr. Druschitz are limited to topics in which he has specialized knowledge.

### III.

In general, Putman's objections to Rodgers's opinions and their factual support go to weight, rather than admissibility. Rodgers opines that several factors contributed to Putman's accident. Because it is impossible to know precisely how much movement the 10ML-II was subjected to or exactly how much gunpowder Putman used, Rodgers draws conclusions from the information that exists. Putman is free to point out his concerns as to the viability of these conclusions on cross examination, but nothing argued bars Rodgers from testifying as to Putman's use of this muzzleloader.

Putman also argues that Rodgers's opinions go to matters within the jurors' understanding and thus are unhelpful to them, an argument also made in favor of excluding

4

Dr. Sam Fadala. ECF No. 55. While the Fourth Circuit draws a "critical distinction" between expert and nonexpert testimony, U.S. v. Perkins, 470 F.3d 150, 155 (4th Cir. 2006), it has also held that "the 'subject matter of Rule 702 testimony need not be arcane or even especially difficult to comprehend.'" Id. (quoting Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993)). "'Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror.'" SMD Software, Inc. v. EMOVE, Inc., 945 F. Supp. 2d 628, 635 (E.D.N.C. 2013) (quoting Kopf, 993 F.2d at 377). "Even then, the erroneous admission of such testimony is usually harmless: an astronomer's explanation that the days are longer in the summertime may not assist the jury, but it is not likely to cause an erroneous finding of fact." Kopf, 993 F.2d at 377.

Issues regarding the admission of an expert's opinions do arise when that expert offers opinions on "the commonplace" that threaten to replace a jury's "independent exercise of commonsense." Doe by Watson v. Russell County School Board, 292 F. Supp. 3d 690, 717 (W.D. Va. 2018) (quoting Kopf, 993 F.2d at 377). However, nothing in Rodgers's report threatens to replace a jury's independent exercise of common sense. While certainly the jury may take note of the instruction manual and safety warnings of both the 10ML-II and the PowerBelt bullet on its own, the safe operation of muzzleloaders is not a matter of everyday knowledge, and Rodgers's testimony will help the jury understand the provisions of the manual in the context of the evidence in this case.

To be sure, Rodgers is not a metallurgist and may not offer opinions in that realm. However, his experience with the industry allow him to offer opinions as to the proper use of a smokeless powder muzzleloader and to comment on Putman's use of the 10ML-II.

5

## IV.

For the reasons stated above, Putman's Motion to Exclude Opinion Testimony of Steven Rodgers, ECF No. 57, is **DENIED**.

An appropriate Order will be entered.

ENTERED: 03-01-2019

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge